```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

THOMAS RUSCHE, TRUSTEE,
et al.,

       Plaintiffs,

v.                               CASE NO. 8:06-CV-937-T-17TGW

RONALD E. CLAMPITT,

       Defendant.

_____/


ORDER

This cause is before the Court on:

Dkt. 26    Notice of Filing Paper Documents
Dkt. 48    First Amended Complaint
Dkt. 52    Amended Motion for Partial Summary Judgment
Dkt. 56    Response

This case includes the following claims:

Count I        Rule 10b-5 Fraud as to Verba and Wilson Mortgages

Count II       Florida Securities and Investor Protection Act - Verba and Wilson Mortgages

Count III      Common Law Fraud - All Transactions

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Case No. 8:06-CV-937-T-17AEP

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986 All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id.

II. Statement of Facts

1. Plaintiff Thomas Rusche is the trustee of the Thomas James Rusche Living Trust. Plaintiff Sharon Rusche is the trustee of the Sharon P. Rusche Living Trust. The promissory notes and collateral assignments of mortgage name Plaintiffs in their respective capacities as Trustees of the Living Trusts.

2. From 1981 through 2003, Plaintiffs, had business dealings with Defendant Ronald E. Clampitt in which Plaintiffs

Case No. 8:06-CV-937-T-17AEP

turned $570,000.00 over to Defendant Clampitt (Rusche Affidavits, Dkt. 26). These "business dealings" included Plaintiffs giving the funds to Defendant Clampitt and/or to American Equity Corporation of Pinellas in exchange for promissory notes and collateral assignments of mortgage. The collateral assignments state that the intent of the assignment is to secure the associated note (Amended Complaint, Dkt. 48, Exhibits).

3. The business dealings between Plaintiffs and Defendant included the following transactions (Amended Complaint, Dkt. 48, Exhibits):

| | | | |
|---|---|---|---|
| Exh. 1 | 4/8/2000 | $225,000 | Legnini Mortgage |
| Exh. 2 | 7/25/2000 | $275,000 | Mountain Valley Lodge Mortgage |
| Exh. 3 | 5/22/2001 | $15,000 | Verba Mortgage |
| Exh. 4 | 4/8/2000 | $15,000 | Howell Mortgage |
| Exh. 5 | 4/2/2002 | $40,000 | Wilson Mortgage |

4. Plaintiffs received payments from American Equity Corporation of Pinellas and R.E. Clampitt Loan Servicing. (Dkt. 26, Clampitt Deposition Exhibits, Rusche Affidavits).

5. Plaintiffs allege that during all business dealings with Defendant Clampitt, Plaintiffs did not have training, education or experience in real estate investments, and reposed their faith and trust in Defendant Clampitt's self-professed expertise (Dkt. 26, Rusche Affidavits).

Case No. 8:06-CV-937-T-17AEP

    6. Defendant Ronald E. Clampitt owned and operated American Equity Corporation of Pinellas, a mortgage broker. Defendant Clampitt started American Equity Corporation of Pinellas after Action Mortgage, another corporation owned and operated by Defendant Clampitt, ceased its operations. Action Mortgage was a mortgage broker (Clampitt Deposition, p. 5). Defendant Ronald E. Clampitt also owned and operated R.E. Clampitt Loan Servicing, an unincorporated entity.

    7. Defendant Clampitt testified that when American Equity Corporation of Pinellas agreed to fund a loan to a mortgagee but did not have the means to completely fund the loan, Defendant American Equity Corporation would seek other lenders to fully fund the loan. American Equity Corporation then assigned part of that mortgage (Clampitt Deposition, pp. 86-89).

    8. Defendant Clampitt testified that borrowers paid money into the bank account of R. E. Clampitt Loan Servicing, which would then pay the lenders (Clampitt Deposition, p. 31, ll. 18-21). Defendant Clampitt further testified that Defendant Clampitt used Defendant's personal funds to pay Plaintiffs. (Clampitt Deposition, p. 32, ll. 18-20). Defendant Clampitt testified that Defendant used personal credit lines to pay lenders in the event of default by borrowers (Clampitt Deposition, p. 32, ll. 6-17). Defendant Clampitt testified that Defendant Clampitt made both loans and capital contributions to American Equity of Pinellas, but denied having a process to document the loans and capital contributions (Clampitt Deposition, p. 114, ll. 5-24).

9. Defendant Clampitt assigned the Wilson Mortgage to United Bank on February 23, 2001 (Clampitt Deposition, Exh. 11).

10. Defendant Ronald E. Clampitt suffered a stroke in June, 2003, which impaired Defendant Clampitt's cognitive abilities and memory. (Amended Complaint, par. 11; Clampitt Deposition, p. 14).

11. Plaintiffs allege that in July, 2003, Ron Bayless, as representative of Defendant Clampitt, represented to Plaintiffs that Plaintiffs would be paid in full, which was intended to and did cause Plaintiffs to forbear on the foreclosure of the "Mountain Valley" mortgage, preventing Plaintiffs from discovering Defendant Clampitt's Ponzi scheme (Amended Complaint, par. 15; Dkt. 26, Rusche Affidavits).

12. In October, 2003, Defendant Clampitt paid Plaintiffs an amount which brought the Mountain Valley mortgage current. Plaintiffs allege this payment was made with specific intent to persuade Plaintiffs to forbear on foreclosure. (Amended Complaint, pars. 18-20).

13. American Equity Corporation of Pinellas commenced Chapter 7 bankruptcy proceedings on November 5, 2003. A certified copy of the docket is filed in Case No. 8:06-CV-134-T-30MSS, Glauser v. Brook, et al. (Case No. 8:06-CV-134-T-30MSS, Dkt. 1-4). Plaintiffs filed a claim for $580,000 as secured creditors in the bankruptcy proceedings. (Case No. 8:06-CV-134-T-30MSS, Dkt. 1-5).

14. Defendant Clampitt testified that the Bankruptcy Trustee has custody of all books and records of American Equity

Corporation of Pinellas. (Clampitt Deposition, p. 15, ll. 11-16)

15. On October 4, 2005, the assigned Bankruptcy Judge concluded that Plaintiffs Thomas Rusche and Sharon Rusche were unsecured creditors of American Equity Corporation of Pinellas. See <u>In Re American Equity Corporation of Pinellas, Debtor</u>, 332 B.R. 645 (Bk. M.D. Fla. 2005).

16. In the Amended Complaint, Plaintiffs allege that Plaintiffs are persons who purchased the securities at issue as investments to cover antecedent debts and to gain future profits, and not for their own personal use. (Amended Complaint, Dkt. 48, par. 26).

17. Plaintiffs commenced this case against Defendant Ronald E. Clampitt on May 18, 2006.


III. Plaintiffs' Amended Motion for Partial Summary Judgment

Plaintiffs seek a partial summary judgment as to liability on Counts I, II and III of the Amended Complaint, and as to the personal liability of Defendant Clampitt on all Counts of the Amended Complaint. Plaintiffs request that the Court find that Defendant Clampitt is personally liable under Section 10-b-5 of the Federal Securities Act and the Florida Securities Act on the Wilson and Verba Mortgages, and that Defendant Clampitt is personally liable for fraud on the other mortgages Plaintiffs purchased from Defendant Clampitt. Plaintiffs request that the Court reserve jurisdiction as to the issues of compensatory damages, punitive damages, attorneys fees and costs pursuant to

Case No. 8:06-CV-937-T-17AEP

the Florida Securities Act, and damages, punitive damages, and costs for the Common Law Fraud claim.

IV. Defendant Clampitt's Response

Defendant Clampitt responds that there are genuine issues of material fact which preclude the entry of partial summary judgment in this case, as follows:

> 1. Federal securities laws do not apply to the notes and collateral assignments of mortgages at issue because they do not constitute "securities" under applicable federal and state law;
>
> 2. Plaintiff's Motion does not allege any fraudulent representations that were material to the specific transactions;
>
> 3. Defendant did not have the requisite intent to commit fraud;
>
> 4. Defendant is not personally liable for the alleged acts of his separate corporations, American Equity Corporation, under an alter ego theory.

V. Discussion

A. The Verba and Wilson Assignments of Mortgage

The Court previously found that Plaintiffs' federal securities claim is limited to the transaction dated May 22, 2001 (Amended Complaint, Exh. 3) and the transaction dated April 2, 2002 (Amended Complaint, Exhibit 5).

Case No. 8:06-CV-937-T-17AEP

B. Count I - Rule 10b-5 Claim

In Count I of the Amended Complaint, Plaintiffs allege that Defendant Clampitt made misrepresentations of fact in 2003 and 2004 as to the Mountain Valley Mortgage, along with direct and indirect payments on the Mountain Valley Mortgage, to lull Plaintiffs into the belief that Defendant Clampitt would make the Verba and Wilson mortgages good through Defendant Clampitt's personal guarantee. Plaintiffs allege that Defendant Clampitt intended to mislead Plaintiffs as to the viability of the assignments of the Verba and Wilson mortgages, the misrepresentations, omissions and payments were an extreme departure from ordinary care, and proximately damaged Plaintiffs. Plaintiffs seek the rescission of their contracts, a return of the purchase price, interest and damages for additional out of pocket loss.

The elements of a Rule 10b-5 claim are: 1) a material representation or omission; 2) made with scienter; 3) in connection with the purchase or sale of a security; 4) reliance on a misstatement or omission; 5) economic loss; and 6) a causal connection between the material misrepresentation or omission and the loss. Instituto De Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1353 (11th Cir. 2008).

Plaintiffs argue that Defendant Clampitt sold Plaintiff investment contracts which are securities pursuant to Section 2 of the Securities Act of 1933, and are securities under Florida law. Plaintiffs argue that the instruments constitute an investment of money, in a common enterprise, with the expectation of profit to be solely derived from the efforts of another. See

8

Case No. 8:06-CV-937-T-17AEP

Securities and Exchange Commission v. W.J. Howey Co., 328 U.S. 293 (1946). Plaintiffs argue that Defendant Clampitt falsely represented that Plaintiffs were purchasing secured interests in real estate, and falsely told Plaintiffs their investments were safe despite the bankruptcy of American Equity Corporation of Pinellas. (Dkt. 52, p. 14). Plaintiffs further argue that Plaintiffs did not receive actual notice that Plaintiffs were not secured creditors until January, 2006.

Defendant Clampitt argues that the promissory notes and mortgages are not securities, the misrepresentations and omissions alleged in the Amended Complaint do not relate directly to the Verba and Wilson mortgages, and there are genuine disputes of material fact as to whether Defendant Clampitt intentionally committed fraudulent acts and/or made fraudulent representations to Plaintiffs in connection with the Verba and Wilson mortgages.

The Court is required to apply Rule 10b-5's "in connection with the purchase and sale of a security" requirement flexibly. Rule 10b-5 applies to sellers, purchasers and holders of securities. There are a host of unresolved material factual issues associated with Plaintiffs' Rule 10b-5 claim. After consideration, the Court **denies** the Amended Motion for Partial Summary Judgment as to Count I.

B. Count II - Florida Securities and Investor Protection Act - Verba and Wilson Mortgages

In Count II, Plaintiffs allege many alternative bases for Plaintiffs' claim under the Florida Securities and Investor Protection Act, Ch. 517, Florida Statutes. After consideration, the Court finds that the presence of genuine disputes of material

9

Case No. 8:06-CV-937-T-17AEP

fact precludes the entry of partial summary judgment. The Court **denies** the Amended Motion for Partial Summary Judgment as to Count II.

C. Count III - Common Law Fraud - All Transactions

The essential elements of common law fraud are: 1) a false statement of fact; 2) known by the person making the statement to be false at the time it was made; 3) made for the purpose of inducing another to act in reliance thereon; 4) action by the other person in reliance on the correctness of the statement; and 5) resulting damage to the other person. See Gandy v. Trans World Computer Technology Group, 787 So.2d 116 (2nd DCA 2001). The statements of fact must refer to a present or existing fact, except where the promise to perform a material matter in the future is made without any intention of performing or is made with the positive intention not to perform. Id. No presumption of reliance attaches to a common law fraud claim; actual reliance is an element of the claim that must be established. Under Florida law, the standard for scienter is more stringent than that of a Rule 10b-5 claim. Actual knowledge of falsity is required, and recklessness is not sufficient to establish a common law fraud claim.

After consideration, the Court finds that the presence of genuine disputes of material fact precludes the entry of partial summary judgment as to the common law fraud claim. The Court **denies** Plaintiffs' Amended Motion for Partial Summary Judgment as to Count III.

D.  Alter Ego Theory

Plaintiffs seek entry of partial summary judgment based on Plaintiffs' theory that Defendant Ronald Clampitt operated American Equity Corporation of Pinellas to illegally sell securities.  Plaintiffs contend that Defendant Clampitt co-mingled corporate and personal funds to carry out Defendant Clampitt's alleged scheme to defraud.

Defendant Clampitt responds that American Equity Corporation of Pinellas was a legitimate business entity which originated loans to borrowers in exchange for promissory notes secured b y mortgages on real property.  Defendant Clampitt further argues that American Equity Corporation of Pinellas maintained its own bank accounts and separate corporate records, including detailed records outlining the payments received from borrowers on the repayment of loans, who made the payments, and to which lenders the payments belonged.  Defendant Clampitt further testified that Defendant Clampitt made loans or capital contributions to American Equity Corporation of Pinellas with the intent that the loans and contributions would be repaid.


Under Florida law, the corporate veil will not be pierced unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud on them....Unless it is shown that a corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing the corporate veil, those who utilize Florida law in order to do business in the corporate form have the right to rely on the

Case No. 8:06-CV-937-T-17AEP

rules of [Florida] law to protect them from personal liability. <u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So.2d 1114, 1120-1121 (Fla. 1984).

After consideration, the Court finds that the presence of genuine disputes of material fact precludes the entry of partial summary judgment as to the claim of alter ego personal liability. The Court **denies** the Amended Motion for Partial Summary Judgment as to this issue. Accordingly, it is

**ORDERED** that Plaintiffs' Amended Motion for Partial Summary Judgment is **denied.**

**DONE and ORDERED** in Chambers in Tampa, Florida on this 12th day of January, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record